**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:19-cr-436-SI-43 |
| v. | **OPINION AND ORDER** |
| **EDUARDO BARBOSA LOPEZ**, | |
| Defendant. | |

Scott Erik Asphaug, Acting United States Attorney, District of Oregon, and Christopher Cardani and Cassady Anne Adams, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF OREGON, 1000 SW Third Avenue, Suite 600, Portland, OR 97204. Of Attorneys for the United States of America.

Ethan Levi, LEVI MERRITHEW HORST PC, 610 SW Alder Street, Suite 415, Portland, Oregon 97205. Of Attorney for Defendant Eduardo Barbosa-Lopez.

**Michael H. Simon, District Judge.**

In a Superseding Indictment, Defendant Eduardo Barbosa Lopez (Mr. Barbosa) is

charged with: (1) conspiring to distribute and possess with intent to distribute methamphetamine,

heroin, and cocaine; using communication facilities in furtherance of the conspiracy; and

maintaining premises to distribute controlled substance, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A), 841(b)(1)(C), 843(b), 846, 856(a)(1), and 856(b) (Count 1); and (2) possessing

with the intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1)

and 841(b)(1)(A) (Count 61). ECF 202.

Defendant Barbosa has filed two motions to suppress evidence. In his first motion, Mr. Barbosa moves to suppress evidence seized during the execution of a search warrant. ECF 1277. Primarily, he argues that the search warrant affidavit was "bare bones" and failed to provide objective probable cause. He seeks to suppress evidence seized on October 2, 2019 from his home, located at 7449 SE Augusta Court, Portland, Oregon, 97206. ECF 1277. In his second motion, Mr. Barbosa moves to suppress evidence of wiretapped conversations and their fruits obtained under Title III of the Omnibus Crime Control and Safe Streets Act of 1968. ECF 1279. In addition, in connection with both motions, Mr. Barbosa requests an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154 (1978) (*Franks* Hearing). The government opposes both motions to suppress and Defendant's request for a *Franks* Hearing.

The Court has considered the arguments and evidence presented by the parties, including the Declaration of Defendant in Support of Motion to Suppress Evidence. ECF 1278. On October 6, 2021, the Court heard oral argument. For the reasons that follow, the Court DENIES Mr. Barbosa's motions and his request for a *Franks* Hearing.

## STANDARDS

### A. Search Warrant Applications

The Fourth Amendment requires that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const., amend. IV. A search warrant is supported by probable cause if the issuing judge finds that, "given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). As the Court now tasked with reviewing the issuing judge's finding of probable cause, we must "simply ensure that the [issuing judge] had a 'substantial basis for . . . concluding' that probable cause existed." *Id.*

at 238-39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). A reviewing court must give great deference to an issuing judge's finding that probable cause supports a warrant. *United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011); *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc) (declaring that courts "are not in a position to flyspeck the affidavit through de novo review").

An affidavit filed in support of a search warrant application, however, must consist of more than conclusory statements and bare-bones assertions. *See United States v. Underwood*, 725 F.3d 1076, 1081 (9th Cir. 2013). Instead, the affidavit "must recite underlying facts so that the issuing judge can draw his or her own reasonable inferences and conclusions; it is these facts that form the central basis of the probable cause determination." *Id*. Whether probable cause exists "depends upon the totality of the circumstances, including reasonable inferences, and is a 'commonsense practical question.'" *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (quoting *Gourde*, 440 F.3d at 1069). "[P]robable cause means 'fair probability,' not certainty or even a preponderance of the evidence." *Gourde*, 440 F.3d at 1069.

The Ninth Circuit also has held that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993); *see also United States v. Job*, 851 F.3d 889, 901 (9th Cir. 2017); *United States v. Garcia-Villalba*, 585 F.3d 1223, 1234 (9th Cir. 2009); *United Sates v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004); *United States v. Chavez-Miranda*, 306 F.3d 973, 978 (9th Cir. 2002).

## B.  Wiretap Applications

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 prohibits the "[i]nterception and disclosure of wire, oral, and electronic communications," except as provided by the statute. 18 U.S.C. § 2511. Title III allows law enforcement officers to apply for

authorization to conduct electronic surveillance. 18 U.S.C. § 2516. Under § 2518(1), the

government's application to obtain a wiretap must include, among other things, the following:

> (b) a full and complete statement of the facts and circumstances
> relied upon by the applicant, to justify his belief that an order
> should be issued . . . . [and] (c) *a full and complete statement as to*
> *whether or not other investigative procedures have been tried and*
> *failed or why they reasonably appear to be unlikely to succeed if*
> *tried or to be too dangerous* . . . .

18 U.S.C. § 2518(1) (emphasis added).

The government must strictly adhere to these procedural requirements. *United States v.*
*Kalustian*, 529 F.2d 585, 588 (9th Cir. 1975) (citing *United States v. Giordano*, 416 U.S. 505
(1974)). Additionally, the government must overcome the statutory presumption against the use
of wiretaps by establishing "necessity." *United States v. Gonzalez*, 412 F.3d 1102, 1112 (9th
Cir. 2005). A wiretap can be necessary when it enables the government to "develop an effective
case" to prove the defendant's guilt beyond a reasonable doubt. *United States v. McGuire*, 307
F.3d 1192, 1198 (9th Cir. 2002).

The Ninth Circuit has recognized that the government need not "exhaust every
conceivable alternative before obtaining a wiretap." *United States v. Rivera*, 527 F.3d 891, 902
(9th Cir. 2008); *see also United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985). As
explained by the Ninth Circuit, "[t]he necessity for the wiretap is evaluated in light of the
government's need not merely to collect some evidence, but to "develop an effective case against
those involved in the conspiracy." *United States v. Decoud*, 456 F.3d 996, 1007 (9th Cir. 2006)
(quoting *United States v. Brone*, 792 F.2d 1504, 1506 (9th Cir.1986) (Kennedy, J.)). In this
context, "effective case" means "evidence of guilt beyond a reasonable doubt." *United States v.*
*McGuire*, 307 F.3d 1192, 1198 (9th Cir. 2002).

## C. *Franks* Hearing

In challenging an affidavit based on an alleged violation of *Franks v. Delaware*, a

defendant must make a substantial preliminary showing that the affiant included a false

statement made either knowingly and intentionally or with reckless disregard for the truth and

that the allegedly false statement was material to the court's finding of necessity. *See Ippolito*,

774 F.2d at 1485; *see also Gonzalez*, 412 F.3d at 1111 (noting that be entitled to an evidentiary

hearing under *Franks*, a defendant must make a preliminary showing of a material

misrepresentation or omission). The requirements for a *Franks* Hearing include five-factors:

> (1) the defendant must allege specifically which portions of the
> warrant affidavit are claimed to be false; (2) the defendant must
> contend that the false statements or omissions were deliberately or
> recklessly made; (3) a detailed offer of proof, including affidavits,
> must accompany the allegations; (4) the veracity of only the affiant
> must be challenged; and (5) the challenged statements must be
> necessary to find necessity.

*United States v. DiCesare*, 765 F.2d 890, 894-95 (9th Cir.), *amended*, 777 F.2d 543 (9th

Cir. 1985) (citation omitted).

## BACKGROUND

In December 2017, local law enforcement officers were investigating drug trafficking

activities of dealers operating in Portland, Oregon. Federal agents joined the investigation when

organizational connections were established between local drug traffickers and others based in

Mexico. The joint investigation revealed that a specific drug trafficking organization, the

Monroy Drug Trafficking Organization (DTO), was arranging for transportation and distribution

of large amounts of methamphetamine and heroin from Mexico and laundering the proceeds

from the United States to Mexico. The investigation involved traditional law enforcement

investigative methods, such as pole cameras, surveillance, geolocation data for phones, vehicle

trackers, search warrants, informants, and undercover drug buyers.

The government determined that applying these methods for 16 months did not achieve the goal of identifying, dismantling, and charging DTO members. In March 2019, agents applied for and received authority to wiretap the telephone lines of several suspected members of the Monroy DTO, including potential drug dealers and money launderers. The government filed six applications and one extension for wiretap authority, all of which were granted. Agents found that the DTO rented several properties in the Portland area as residences for DTO line workers and as places to store drugs and related paraphernalia for DTO operations. One of these residences, 7449 SE Augusta Court, Portland, Oregon, 97206 (Premises-3), is the subject of Defendant Barbosa's two motions to suppress. Agents installed a pole camera at Premises-3. In April 2019, the government conducted a financial investigation of the wire remitting services responsible for forwarding cash to Mexico.

During the wiretap investigation, agents found that a person nicknamed "Barbas" allegedly supplied controlled substances to the DTO. Based on wiretaps, agents learned that "Barbas" used six different telephone numbers to send or receive 212 telephone calls or text messages, most of which were related to DTO drug distribution and money laundering. Agents also became aware through the wiretaps that "Barbas" lived in DTO-rented housing. Investigators had initially—but mistakenly—believed that "Barbas" was Cristian Hanguin Fernandez, a suspect in another Portland-based drug investigation. Agents later discovered from fingerprint analysis after detaining "Barbas" in October that the nickname "Barbas" instead referred to Eduardo Barbosa-Lopez, the Defendant in this case who filed the pending motions.

Between June 4 and 5, 2019, investigators intercepted a series of calls between Defendant Barbosa and a codefendant, Jesus Gonzalez, about an upcoming drug deal. On June 5, 2019, law enforcement agents followed Mr. Barbosa's vehicle, which took circuitous paths, for

approximately six hours before agents attached a Global Positioning System (GPS) tracking

device to the exterior under carriage of Mr. Barbosa's car at 6:22 p.m. Later that evening, about

five and one-half hours after installing the GPS tracking device, Special Agent Clinton Bruce

Lindsly with U.S. Homeland Security Investigations applied for a tracking warrant authorizing

the installation and use of the GPS tracking device. United States Magistrate Judge Jolie A.

Russo issued the requested tracking warrant at 11:50 p.m. Investigators, however, intentionally

did not monitor the GPS device before obtaining the warrant. Because agents learned through

authorized wiretaps that Mr. Barbosa had become aware that agents were using GPS tracking

devices, the agents removed that device sometime between the evening of June 5 and the next

day, to avoid the tracking device being discovered.[1]

Defendant then changed his phone numbers, car, and address, but, according to

investigators, did not cease his criminal activities. Before moving into Premises-3, Defendant

hired a cleaning crew to clean the house.

On September 30, 2019, Special Agent Lindsly applied for a search warrant for 11

buildings, including "Barbas's" new residence, Premises-3. The affidavit described aspects of the

alleged conspiracy, including events from November 2018 until the date of the affidavit, the

DTO's multiple levels of participants, "Barbas" as a drug supplier suspect, as well as five

intercepted phone calls beginning on September 15, 2019. In the intercepted calls, there was no

explicit mention of the words "drugs," "methamphetamine," "heroin," or "cocaine." Instead,

based on their experience and expertise, investigators interpreted words that they overheard,

---

[1] According to Special Agent Lindsly's affidavit dated September 9, 2021, Mr. Barbosa was heard on the wiretap on June 6, 2019, telling Gonzalez that he observed law enforcement agents crawling underneath his vehicle. Lindsly explained that agents were removing the GPS device at that time.

including "agua," "morena," "aparato," and "carne," as code words for drugs or drug-related vocabulary. The affidavit also described the reasons why agents believed Premises-3 to be an important target, as it was likely where "Barbas" was residing. United States Magistrate Judge John V. Acosta issued warrants authorizing these searches, including the search of Mr. Barbosa's residence, Premises-3.

On October 2, 2019, police executed the search warrant on Premises-3 and arrested Mr. Barbosa during the search after finding drugs and other evidence in the house. While executing the search warrant at Premises-3, agents found a large plastic bag containing 18 smaller bags of a substance that tested positive for methamphetamine. Agents also seized items including fake passports, $23,000 in U.S. currency, cocaine, several cellphones, drug ledgers, and receipts for money that had been transferred by wire. During his post-arrest interview, Mr. Barbosa stated that he resided at 7449 Augusta Court but denied knowing that there were drugs in the house. He did, however, admit that everything else in the house belonged to him.

On September 24, 2019, a federal grand jury issued an indictment, charging 41 defendants.[2] ECF 1. Mr. Barbosa was not named in the original indictment. "Cristian Hanguin Fernandez, a.k.a. Barbas," however, was named as a defendant. *Id*. On October 24, 2019, the grand jury returned a 61-count superseding indictment, charging 42 defendants with an international conspiracy to transport and distribute controlled substances. ECF 202. The superseding indictment named as a defendant "Eduardo Barbosa Lopez, a.k.a. Barbas," but no longer named "Cristian Hanguin Fernandez." *Id*.

---

[2] A grand jury determines whether there is probable cause to believe that a crime has been committed and protects citizens against unfounded and unjust prosecutions. *See, e.g.*, *U.S. v. Sells Eng'g Inc.*, 463 U.S. 418, 423 (1983); *U.S. v. Cotton*, 535 U.S. 625, 634 (2002).

**DISCUSSION**

**A. Defendant's Challenge to the Search Warrant**

Mr. Barbosa argues that the 97-page search warrant affidavit signed by Special Agent Lindsly (to which the original indictment was appended), ECF 1277-1, was "bare bones," "stale," and failed to provide objective probable cause that Premises-3 contained evidence of a crime. Defendant contends that the affidavit contained only "conclusory" allegations unsupported by evidence. The affidavit, however, is much more specific than Mr. Barbosa's characterization. The affidavit, made under oath, described the place to be searched (Premises-3), the person who was believed to be living there ("Barbas"), and the things expected to be found (evidence of illegal drug-dealing); it also contained sufficient information for the issuing judge to find probable cause.

Mr. Barbosa contends that Special Agent Lindsly's affidavit was conclusory because it did not explain *how* agents concluded (1) that "Barbas" was Fernandez, (2) the meaning of the code words, (3) that drug deliveries were occurring at "Barbas's'" house, and (4) that Premises-3 was Barbas's new residence. The law, however, does not demand these details in a warrant application but merely requires a "substantial basis" for a magistrate judge to find probable cause. *See Garcia-Villalba*, 585 F.3d at 1234. Moreover, Special Agent Lindsly elaborated on each of these four issues in his September 9, 2021 declaration with reasonable justifications and evidentiary support.

In issuing the search warrant, Judge Acosta needed only find that the affidavit established a "fair probability" that evidence of a drug crime would be found at Premises-3. *Illinois v. Gates*, 462 U.S. at 238. Judge Acosta considered reliable evidence from the affidavit, including wiretaps, pole camera images, and observations from experienced law enforcement officers. Mr. Barbosa contends that he moved into the DTO-controlled Premises-3 shortly before his

arrest and that Premises-3 had no prior nexus to drug activity. Conversations between Mr. Barbosa and several codefendants, however, as well as photographic evidence, show that "Barbas" was a DTO drug supplier and indicated the likely presence of relevant evidence at Premises-3. Special Agent Lindsly's affidavit summarized the relevant conversations. Specifically, wiretap and pole camera evidence directly support the conclusion that Premises-3 was the new residence of Barbas and that Barbas was a supplier for the Monroy DTO who previously distributed illegal drugs from previous residence. Further, because evidence is likely found in drug dealers' homes, *see Job*, 851 F.3d at 901, Barbas likely would have evidence of drug-dealing at his new residence, Premises-3.

Special Agent Lindsly's affidavit may not have contained detailed and nuanced explanations for his entire reasoning process or even accurate hypotheses, but it was based on years of relevant professional experience and reasonably credible sources that assisted the magistrate judge in determining that there was sufficient probable cause. Applying the "totality of circumstances" test from *Kelley*, 482 F.3d at 1050 (quoting *Gourde*, 440 F.3d at 1069), the Court finds a substantial basis for concluding that probable cause existed.

Mr. Barbosa also requests that the Court excise what Defendant asserts is "misleading and inaccurate statements the affiant intentionally [written] into the affidavit" to create a false impression of probable cause. This is Defendant's request for a *Franks* Hearing in connection with his challenge to the search warrant. Mr. Barbosa identifies four alleged misrepresentations, omissions, or fabrications: (1) the description of Premises-3 as a "stash house"; (2) the use of a cleaning crew before Mr. Barbosa moved into the residence of Premises-3; (3) the code name "Crystal's House" for Premises-3; and (4) Special Agent Lindsly's interpretation of certain drug-related DTO code words.

The Court has considered each of these arguments and contentions and finds them to be without merit. First, the affidavit did not attempt to attribute the "stash house" statement specifically as being made by Mr. Barbosa, as it did not use quotation marks when invoking this phrase. *See* ECF 1277-1. Second, as Mr. Barbosa himself stated during an intercepted call on September 21, 2019, he planned to move into Premises-3 after, not before, the cleaning crew cleaned the house. ECF 1324-4. Pole camera and wiretap evidence confirmed that Defendant moved into Premises-3 after the cleaning crew cleaned it. *Id.* Third, the inference that the phrase "Crystal's House" referred to Premises-3 was logical and reasonable: although Premises-3 was not directly on Crystal Boulevard, it is merely one street away. ECF 1277-1. Last, regarding the interpreted code words, Special Agent Lindsly used his experience and knowledge to interpret the code words to the best of his ability. Mr. Barbosa presented no convincing evidence that Special Agent Lindsly intentionally attempted to mislead the magistrate judge with any of the interpretations. Having fully considered both parties' submissions, the Court does not find any of the allegations to meet the high threshold required under *Franks*. Overall, there is insufficient evidence to suggest that Special Agent Lindsly knowingly, intentionally, or even recklessly sought to mislead, misrepresent, or omit material information in the search warrant application.

In Mr. Barbosa's Reply to Government's Response to Defendant's Motions to Suppress Evidence, he raises a new argument that the government "flagrantly violated Mr. Barbosa's constitutional rights." ECF 1341 at 2. He alleges that the government attached a GPS tracking device on his vehicle on June 5, 2019, without having first obtained a warrant to do so. A close review of the facts shows that Special Agent Lindsly applied for, and soon thereafter obtained from Judge Russo, a tracking warrant on the same day, albeit approximately five and one-half hours *after* investigators attached the GPS device.

The government argues that investigators attached the GPS device under exigent circumstances and then promptly sought a warrant. More importantly for purposes of the pending motions to suppress, the government explains that it did not monitor or in any way use the tracking device before obtaining the warrant several hours later and, in any event, promptly removed the device within hours after it was installed. Special Agent Lindsly did not misrepresent or omit these facts, nor did he intentionally mislead Judge Acosta into issuing the search warrant of Premises-3 based on GPS tracking. Instead, Special Agent Lindsly raised the GPS device issue as part of the government's argument that Mr. Barbosa continued his criminal activities even after realizing that agents had attached a GPS device on his vehicle. Overall, the link between the GPS incident and either of Defendant's Motions to Suppress is tenuous at best and outside the scope of the pending motions.[3]

For the reasons stated above, the Court finds that evidence seized during the execution of search warrants in this case need not be suppressed.[4]

## B.  Defendant's Challenge to the Wiretap Applications

In challenging the government's wiretap authorizations, Mr. Barbosa argues that the government must exhaust normal investigative techniques to show that a wiretap is necessary to advance an investigation. Defendant contends that, before applying for a wiretap order under Title III, the government ignored (1) the pole camera at Premises-3 and (2) the money remitting

---

[3] During the court hearing on October 6, 2021, Defendant conceded that the remedy for any constitutional violation (if there was one) regarding the placement of the GPS device before a warrant had been obtained be a civil action and that this issue would not require the Court to suppress evidence (especially because no evidence was obtained from the pre-warrant installation of the GPS device).

[4] Because there is sufficient basis for probable cause and a lack of bad faith, the Court need not address the government's alternative argument invoking the good faith exception to the exclusionary rule.

services. Defendant also requests a *Franks* hearing on this issue, asserting that investigators recklessly and intentionally omitted and withheld information from the authorizing court.

The Ninth Circuit has held that to justify the necessity of a wiretap, the government need not exhaust every alternative before seeking a wiretap authorization. *See, e.g.*, *Rivera*, 527 F.3d at 902; *Brone*, 792 F.2d at 1506; *Ippolito*, 774 F.3d at 1486. Here, although investigators attempted to achieve their investigatory goals through traditional methods, they were unable to prove Mr. Barbosa and his codefendants guilty beyond a reasonable doubt without the aid of wiretaps.

As part of a larger, cross-border alleged conspiracy, the codefendants, including Defendant in this case, repeatedly attempted to evade law enforcement detection. The GPS tracker incident on June 5th was just one illustration of Defendant and codefendants' activities in evading detection by investigators. Although the pole camera and April 2019 financial investigations were helpful to law enforcement agents, those methods were insufficient. The pole camera may have given investigators some valuable information, photographic evidence from a pole camera could, at most, show Defendant's possible association with the other members of the DTO. Mere association based on appearing at possibly suspicious locations at possibly suspicious times in the day, however, is inadequate without further evidence to prove guilt beyond a reasonable doubt. Family members and other innocent parties unrelated to the alleged conspiracy may also walk in the areas that the pole camera photographed. It is neither practical nor necessary for law enforcement officers to review all pole camera depictions of all persons. The financial records, similarly, were insufficient for law enforcement needs. Aside from delays in the financial investigation process, more critically, the financial records on their own do not provide definitive evidence on a conspirator's intent or knowledge. Although such information

can help investigators understand the nature of transactions, these details do not explicitly reveal whether drug-dealing activity occurred and whether money that was wired came from illegal transactions. Wiretapping, on the other hand, could provide such information. It thus became necessary for agents to obtain wiretap authorization.

The Court finds that the government has adequately adhered to the procedural requirements for wiretap applications under 18 U.S.C. § 2511. Additionally, the Court does not find any bad faith in the investigators' wiretap applications and does not find that Mr. Barbosa has met his burden for obtaining a *Franks* Hearing. As the Court discussed previously regarding search warrants, Mr. Barbosa presents insufficient evidence of any investigator knowingly, intentionally, or even recklessly seeking to mislead, misrepresent, or omit material information in any wiretap application at issue. The investigators made a good-faith attempt to employ less intrusive investigative methods but later found it necessary to apply for wiretap authorization.

In his Reply to Government's Response to Defendant's Motions to Suppress Evidence, Mr. Barbosa argued that the government's evidence from the Premises-3 pole camera and money remitting records were enough to paint a "good impressionist picture" and thus there was no necessity for a wiretap. In a criminal case, however, the government must prove a defendant's guilt beyond a reasonable doubt, consistent with all applicable constitutional and statutory requirements, and not merely present a good impressionistic picture. For example, regarding the money laundering charges for codefendants from this conspiracy, the government must prove beyond a reasonable doubt that the defendants had *knowledge* about the proceeds being fruits of an unlawful activity. This is a high threshold, and a merely impressionist picture would not suffice. *See* 18 U.S.C. § 1956.

For the reasons stated above, the Court finds that evidence obtained from authorized wiretapping in this case need not be suppressed.

## CONCLUSION

The Court DENIES Defendant's Motion to Suppress Evidence Seized on the basis of Search Warrant (ECF 1277), Defendant's Motion to Suppress Title III Evidence (ECF 1279), and Defendant's incorporated requests for a *Franks* Hearing.

**IT IS SO ORDERED**.

DATED this 12th day of October, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge